Case No. 21-7096, Christopher Beaty, Jr. and Nicole Garcia as co-administrators of the estate of Christopher David Beaty, deceased and on the run right, v. Fair Acres Geriatric Center and Delaware County Appellants. Ms. Eisenstein for Appellants, Mr. Pulver for Appellees. Good morning, counsel. Ms. Eisenstein, please proceed when you're ready. Good morning, Your Honor. Alana Eisenstein on behalf of Appellants, Delaware County and Fair Acres Geriatric Center. If I may reserve three minutes for rebuttal. Your Honor, plaintiff's complaint is barred by PREP Act immunity because it is bound up in claims that relate to the county's administration of covered countermeasures and it fails to state a Monell claim by failing to plead that the county had any affirmative policy or was deliberately indifferent to the risk of violation of actionable federal rights. Let me start first with the PREP Act. The PREP Act bars- Can we start, Ms. Eisenstein, can we start with jurisdiction? Just because I think you would at least acknowledge that there's a meaty jurisdictional issue here. I know you have a view on which way it comes out, but it at least seems to be a significant question. And I guess where I'd start with that is under subsection E of 247D-6D, the title of subsection E is procedures for suit. And most of subsection E other than E10 speaks of a particular kind of suit. And that's the suit that's brought under subsection D. And so your argument is that, well, E10 doesn't do that. And so 10 opens it back up to things beyond the suit under D. And I guess my question is, what do you think the suit is in the title of procedures for suit? What kind of suit are they referring- was Congress intending to refer to? So, Your Honor, I think it's a suit that is allegedly barred or assertedly barred by PREP Act immunity. So there's a good reason why there's a whole list of procedures for suit just for willful misconduct claims. Because under the statute, those are the only kind of claims that have an exception to immunity that are otherwise related to the administration or use of covered countermeasures. By contrast, a claim like ours, where the assertion is that this isn't a willful misconduct claim. No one thinks that it is. And we've asserted that it's barred by immunity. That is a claim that should stop in its tracks. So it makes sense that there's not nine provisions providing procedures for our kind of suit. Because the only thing that should happen in a suit like ours is either the suit proceeds because it's not barred by the PREP Act. Or if we assert that it is and our motion is denied, then we get to take an interlocutory appeal under the plain language of subsection E10. So I think that there's no anomaly- When it says procedures for suit, it seems to me that a natural reading of procedures for suit is the procedures for the kind of suit that has just been discussed, which is a suit under D and which is otherwise discussed in particular terms under E. And if you look at D2, for example, D2 is entitled persons who can sue. And then E is the very next header, and it says procedures for suit. And it just seems somewhat natural to read procedures for suit to mean a kind of suit that has just been referred to under D2 as in defining the persons who can sue and the kind of suit that is otherwise encompassed by E in every provision in E other than arguably 10. But the natural way to think about it in my mind or a natural way to think about it in my mind is all of E is about a D suit. That's the suit that procedures for suit is referring to. So, Your Honor, I go back to what D is. So D is an exception to immunity under subsection A, not an application of immunity under subsection A. So it would make little sense to provide for interlocutory appeal for an assertion of immunity under subsection A for the very provision of willful misconduct that's an exception to that provision. Oh, but actually, I think, Ms. Eisenstein, that that actually cuts the other way in the under E1 through 9, the references to action brought under subsection D, whereas as what you just said points out, defendant is the actor to whom E10 is directed. And the defendant's claim is this isn't correctly a suit under subsection D. In fact, it's a suit under A, which is immunized. And so what you just described, I think, really provides a reason why Congress might not have included that limiting language in E10, even though it included it in each of the preceding subsections. So, Your Honor, I respectfully disagree because the E10 has sort of categorical language here that this court shall have jurisdiction by a covered person, which Fair Acres certainly is, taken in 30 days of an order denying a motion to dismiss based on an assertion of the immunity from suit covered by subsection A or based on an assertion of an exclusion under C5. And so there's no such limitation. And I think when Congress in each and every other subsection felt the need to specify in an action under subsection D, which it makes sense to do because it's covering damages, it's covering the means by which the suit is conducted, the type of judges that hear such a suit. In the suit where a covered person, which we undoubtedly are, asserts immunity, the suit should stop in its tracks. And that was one of the overriding interests of Congress. Does that apply to actions in state court? So, Your Honor, I think that provision does by its terms. I think that there could be other doctrines that may otherwise limit this court's jurisdiction to hear a suit directly from state court, including potentially abstention doctrines. But I think by its terms, it could potentially apply to state court actions. Doesn't that seem extraordinary? And the idea that what Congress is intending to do here is to make sure that the D.C. Circuit hears a case from, I don't know, California, the state court in California, and it would only be abstention doctrines or something else that would potentially stand in the way of that. You would think you'd have something pretty pointed to allow for that kind of appeal authority. Just seems extraordinary. Well, Your Honor, I don't think it is that extraordinary because immunities by their terms are typically subject to direct interlocutory appeal. And that's for good reason, because the point of an immunity is not just a defense to liability, but a defense to the lawsuit itself. And so are you assuming that if this E10 does not apply, that there would be no interlocutory appeal to the regional circuit under ordinary collateral order doctrine? I mean, you know, immunities, even without a statutory basis, courts around the country provide interlocutory appeals and all kinds of immunities, sovereign immunities, qualified immunities, presidential immunities. Is your position in part grounded in the assumption that there's an interlocutory appeal to the D.C. Circuit or not at all? Well, Your Honor, certainly the statute only provides for interlocutory appeal to this court exclusively. It doesn't provide for under, you know, there could be a common law collateral order doctrine theory that you could still appeal from this type of statutory immunity. But historically under, for example, 1983 jurisprudence, the interpretation of allowing a denial of qualified immunity to go directly to the Court of Appeals has been an interpretation of 1291, not an interpretation of 1983. And so I think there would be a number of hurdles that we might have to go through to take an immediate appeal of this order to the Third Circuit, whereas the statute expressly grants this court interlocutory appeal from the federal court. And to just address Judge Srivastava and your concern about state court, what I was going to say about why it's not unusual, it comes back to 1983. In 1983 jurisprudence, for example, there is immediate interlocutory appeal for federal cases to federal court and not from state court. And so the fact that it may well be that we cannot, and defendants generally cannot appeal from state court decisions that's not before this court because this is a federal claim. It's a 1983 claim based, you know, predicated on the basis of Monell liability. It was properly in federal court and the very plain terms of Section E10 provide that for an appeal directly to this court. And imagine if we couldn't follow the plain terms of this statute, we as litigants were sitting here deciding what to do in the face of an order that meets the exact terms of this statute. We're a covered person. We are seeking interlocutory appeal from the denial of a motion to dismiss based on an assertion of immunity under subsection A, and we timely appealed. Where else were we supposed to go besides follow the plain language of the statute? Well, you may not have a place to go unless that's just the reality of interlocutory appeals is sometimes they're available and sometimes they're not. And you could seek 1292B certification. Well, you're right, Your Honor, but I think in this case, Congress made a judgment that immunity was an important feature of the implementation of covered countermeasures under the Prep Act. And the reason that it did that is, you know, and to provide such robust immunity from suit was because of an interest in providing an incentive for entities, covered persons who are administering the measures designed to combat a pandemic to do so quickly and without not only threat of ultimate liability, but without having lawsuits that they had to defend in the process. And so the idea of an immediate appeal, as you read it, this provision is really highly anomalous. I'm not aware of, and please provide examples if you are, I'm not aware of any statute in two different courts of appeals would have jurisdiction to review an order that resolves the same issues presented in a single motion based on whether the motion is granted or denied. If it's. Your Honor, I agree it's unusual, but this is this Prep Act is provided for unusual times. It's an emergency statute that is that is designed to address the activities and countermeasures that are implemented during the course of an of a declared emergency. So I think the fact that it has an unusual procedure to this court is not one that should allow this court to or should avoid. And I have one wrinkle to Judge Pillar's question, which is it does seem true that where it goes depends on how the motions resolved. But it also seems true that that that's not even the limiting point of it, because even if it's denied. It could go to two different courts, depending on when the appeal from the denial occurs. Because if the defendant takes the appeal immediately under your theory, it would go to the DC Circuit. Let's suppose there's a denial of summary judgment. But then if the defendant opts to wait. And then takes the appeal after trial, the appeal would go to the 3rd Circuit and there would still be the question of whether immunity was properly denied. So when it's taken would determine which court. Reviews the denial. So, Your Honor, I don't think that first of all, that's not unusual because the idea of this is a defendant protective provision. And second of all, there are other circumstances, including in the contract disputes context, for example, where litigants have choices of whether to go through regional course of appeals or through the DC Circuit route as well as the Court of Claims issue. So there are other statutory schemes that provide different pathways for appeal from administrative orders or from other types of cases. Wait, what if I may take a couple? What are you referring to? I'm really I'm not aware of any any statutory scheme that gives a party that choice. I'm not. I'm not sure what you're. I'm sorry, Honor, and the contract disputes context. There are different pathways for appeal. That's not necessarily a direct interlocutory appeal, but there are different pathways that a litigant may choose for appeal to regional courts of appeals or up through a centralized circuit. So that's not completely unusual in this circumstance. If I'm going to take a couple of minutes. Sir. Correct. I'm sorry, Honor. I think I misspoken to this court. If I may take a couple of moments to talk about the merits here, and in particular, I want to focus on the Monell factors here because, you know, I think one of the distinguishing features of this case compared to many of the other cases that have been decided on complete preemption type grounds around the country is that plaintiffs are trying to proceed by a pure Monell theory, and they have utterly failed to leave the elements of a Monell claim. And that's particularly significant when you combine that with the prep act, because the prep act, to the extent to which they have alleged claims that or they assert that this is some kind of sort of isolated influence incidents of negligence or just a failure to isolate, they run into either the Monell claim because they failed to assert any type of policy or is bound up in policy. And that's, I think, exactly why they're in a catch 22 in terms of the type of claims that they plead that there in terms of just the Monell itself, plaintiffs do not plead any facts that fair acres failed to comply with any public health or medical recommendation or guideline. And I think that is stark and significant here. They just have lists of purported regulations and state statutes that were violated. But the bare facts that are alleged point to no policy, and they certainly don't meet the type of well-established standard for deliberate indifference that this court and the Supreme Court have established that require that the need for action was obvious, that the policymakers understood that there was a high likelihood of violation of federal rights or that the circumstances were persistent and widespread under life circumstances. And so this complaint falls woefully short of Monell, and it fails to state a claim that's not barred by the Prefect. With that, I'll reserve the rebalance of my time for rebuttal. Thank you, Miss Eisenstein. Mr. Pulver, we'll hear from you now. Good morning, Your Honors, and may it please the Court. Adam Pulver for Christopher Beatty, Jr. and Nicole Garcia. Statutory provisions are not read in isolation, and as Judge Srinivasan pointed out, if you look at the context of the surrounding provisions of Subsection E of the PREP Act, as well as like this one. Similarly, on the merits, reading Subsection A as immunity provision in the context of other provisions of the PREP Act confirms its inapplicability to claims for loss relating to the failures to use covered countermeasures. So can I ask on the jurisdictional question, why would Congress, under your reading, why would Congress have allowed for a statutory entitlement to interlocutory review in cases brought under Subsection D, but not allowed for interlocutory review as an entitlement in other cases that also involve a defense of PREP Act immunity? The majority of cases raising an assertion of Subsection A immunity are going to be in state court, and Congress does not prescribe judicial procedures for suit in state court action. So the more natural reasoning is Congress is providing procedures for suit in a federal court here, a specific special re-judge court of the district court for the district. So you could, there could, even if the majority of them are in state court, and I don't offhand have a basis for disputing the empirical premise, but there's going to be other federal cases where it's not a case under Subsection D, but it does involve an assertion of PREP Act. Certainly, there could be some. And why would Congress have said in that particular brand of cases that's brought under Subsection D in the district court for the District of Columbia, there can be an immediate entitlement to interlocutory review in the D.C. Circuit, but in other courts where an assertion of PREP Act immunity is made, and there's then no statutory entitlement to interlocutory review to the regional court of appeals? Well, I think one would be for uniformity, that the procedures, it would be odd to have a different procedure in state court than in federal court just for invoking the normal immunity. I think another would be the potential that, as you know, and it's often briefed, whether there is some sort of COIN immunity, natural interlocutory appeal. That issue is a separate. Those two answers are at war with one another. Well, yes. Well, there's the, there'll be an interlocutory, whether there's an interlocutory appeal in a state court action, Congress has nothing to do with. No, I'm just, I'm just talking about other federal court actions. So another, like this case. So in this case, what do you think would have happened if the defendants would have filed a notice of appeal in the Third Circuit? What would your position have been? Our position would be that they would have needed to file a 1292B motion. And in fact, this is actually. So you don't think there's collateral order review? I do not. And this is actually playing out right now in the Ninth Circuit, which actually shows why it's strange to have this being fought here at the same time. There was an appeal among the cases cited in our 28J letter filed as a notice of appeal to the Ninth Circuit. And there's a motion to dismiss that appeal pending. And the, there is a state prison system. So, and I take it an argument that a party like you would make in denying collateral order review is, look, the statute already prescribes for interlocutory review in some situations. So that would be read to the exclusion of a non-statutory collateral order appeal. So if we assume that your position is that there is no collateral order appeal absent some specification, particularly given that there's a specification under subsection 10, E10, that there's going to be interlocutory review in some situations. Then I come back to my original question, and maybe I'm not stating the question right. But in federal cases that are not brought under subsection D, like this one, why would Congress have allowed for interlocutory review as a matter of statutory entitlement in D cases, but not allowed for it in a case like this? Why wouldn't they have allowed for an interlocutory appeal to the Third Circuit? Well, subsection D cases are just an entirely different beast. They have different pleading requirements, which the filing, they have a special sanctions provision for the filing of cases that only apply to subsection D cases. Congress clearly, we know, did not apply that for subsection D cases like this one, because it says only in subsection D cases. We know that subsection E6 says, I'm sorry, E5 provides that unlike your normal three-judge court, this is not immediately appealable to the Supreme Court. So they needed to have some provision, okay, well, if it doesn't go to the Supreme Court, where does it go? Because usually three-judge courts go right to the Supreme Court. So it says, okay, this three-judge court, you appeal an interlocutory appeal to the D.C. Circuit. So I think that Congress needed to specify things and procedures for suits under subsection D because it's this new animal and it wanted to create special procedures for those suits. It did not create special procedures for any suit where a subsection A defense was raised at all. So it would be unusual to say it only created a special procedure for interlocutory appeals where a subsection A immunity defense was raised. In a way, the oddity of an appeal from a three-judge court to this court upon which the member of the three-judge court presumably also sits, the sloppy and strange character of that in a way seems to me to cut against you because it means that the Congress that was drafting this was really doing novel things. And that might include having orders that, depending on whether their grants are denied, might go in one case to a regional circuit and in the other to the D.C. Circuit. Do you see what I'm saying? That they're either on Ms. Eisenstein's view or on your view, whichever way you look at it, there are novel, novel aspects about these processes. I agree, Your Honor. And notably, this statute was enacted in 2005. And it is unusual that it's taken this long, even though there have been many cutback declarations for this to come up. But one clarification is I actually believe that, as read, the three-judge court, unlike most three-judge courts, would not include a member of the D.C. Circuit because it actually carves out the provision for the creation of three-judge courts that has the chief judge or Judge Shrinivasan as the one who would convene the court. Instead, it says the chief judge suggesting of the district court would create the D.C. three-judge court. Now, of course, as far as I'm aware, this has never been implied. So I don't know if it would be a fight between Chief Judge Shrinivasan and Chief Judge Howell. But as you read it, it explicitly carves out the provision that would give the chief judge of the circuit the power. And I think it would be unusual, well, certainly be unusual, but I don't know if the chief judge of the district court could appoint a judge of this court. But I agree. It is unusual. But if it is unusual and there is enough unusual that's explicit in subsection E that I think for this court to imply another unusual thing that would create such difficult circumstances for district courts would be unnecessary. But really, the hurdle for us is it's not an implication. You know, A or 1 through 9 of subsection E all reference a suit under subsection D. And it is quite striking that that is just not there in E10. And, you know, we are bound by the text. If Congress wanted to do this strange thing, it seems to me we're bound. And how do you explain? I mean, there are many ways that Congress could have referenced suit under subsection D, and it didn't in that. Well, I think, Your Honor, the interesting thing is here both sides are asking the court to read actually in additional language. Fair Acres is suggesting that the court should read in any action in another federal district court, there shall be an interlocutory appeal. Because it acknowledges, I think the term used in their brief is that it would be a jurisdictional puzzle to read this as not having that limitation. To say that it's from any state court action, any administrative agency proceeding, it doesn't even reference Rule 12. It just says a motion to dismiss. A motion to dismiss come in all shapes and forms. So I think that some term needs to be read into here unless a court should read it as being any motion to dismiss filed in a, you know, state court and then administrative proceeding, anything at all. I think the argument today is that it does apply to state court. Right. And I think that would create and perhaps that is the I think the argument in the brief was that the court need not address it. I think if that were to apply, then I think certainly there needs to be a more plain state. And I think even if the plain text of E10 on its own may suggest that there's no limitation, I think if you look at the structure of the suit as a whole, sorry, of subsection E and the statute as a whole, combined with the failure to amend 28 U.S.C. 1294 give meaning to suggest that it is only the subsection D. Notably, if you look at subsection E9, there's another sloppy point of this provision here. Subsection E9 refers to actions brought pursuant to subsection D. But then it also says any federal district court. But we know from other parts of the statute that there isn't any federal district court where a subsection D action is brought. It's only brought in this court. I'm sorry, we're in the D.C. district court. So there are some sloppy, as you said, provisions here. I think that's when we look at what the consequences of different readings of the statute would be. And it would be very difficult for district courts to be having their opinions go to either the Third Circuit or this circuit, depending on which way they rule, and potentially be in a real catch-22. So you don't— Go ahead. Thanks. You don't see any negative implication in this statute vis-a-vis 1292B. You allow that 1292B is always available when there's a denial of immunity. So in this case, so in this case, a 1292B motion could be filed. Correct. And I think, you know, one issue that hasn't been breached is, notably, this doesn't even—statute doesn't even say there shall be a right to an interlocutory appeal. It only says that shall have jurisdiction over an interlocutory appeal. So everyone here is reading into the statute that there is a right to an interlocutory appeal, whereas if the statute just says shall have jurisdiction. So if we're really hyper-technically focused, then FERECA should have filed the 1292B petition to this court, or would be invoking Cohen to this court. Right. It would not be E10. So I think that the statute, because it's a little bit sloppy, everyone here is reading, trying to figure out what Congress meant here. Well, but it does say within 30 days. Yes. So which, I mean, I think the fact that it has a time frame indicates that the mechanism for an appeal would be the appellate vehicle granted by 10. And I agree, and that is why we did not move to dismiss or try to be 1292B, but I think it's—we have to read between the lines in this section. It is not a clear section. It is not the clearest way. If Congress wanted to say there is a right to an interlocutory appeal, I think we'd agree this is not the clearest way to say that. So isn't the closest analog of sort of venue, unusual venue for appeals, the habeas statute that Ms. Eisenstein refers to in her briefing, what's her answer to why that isn't a similar case where the Congress clearly wanted to centralize in this court the consideration of cases coming from district courts in the region? Because that would be centralizing consideration of the issues. This is not dividing, sending to circuits all over the country issues depending on which way immunity rules and when in a case immunity is decided. There would be no logical purpose for Congress to decide that D.C. Circuit should here make all prep law arising from denials of motions to dismiss and denials of motion for summary judgment, but not for grants of motions to dismiss, grants of summary judgment, and final post-trial or— So you tacked on the when, which is a point I was exploring a little bit earlier. Do you—is there any problem with that understanding? Because my understanding of the statute is that it's not just whether it's grant or denied, but it would be when there's an appeal from a denial. An appeal from the denial of a motion to dismiss only, or motion for summary judgment, not an appeal from a denial post-trial or at the end of a case. Correct. Is that the way you understand it too? So an appeal from denial post-trial would go to the Third Circuit in this case. Correct. An appeal from denial under—yeah, Pelham's argument. An appeal from denial under—as an interlocutory—go to the D.C. Isn't Guam your very strong support for your position to the extent that the hurdle for us is the explicit language of E-10? Yes, Your Honor. So Guam explicitly makes clear that negative implication doesn't solve the answer, is not dispositive here. And Guam—of course, there are differences between that statute, but the basic idea of a statute that listed and enumerated various provisions, something was missing from one of them, and the Supreme Court says, that's not—just because it was omitted from that doesn't make this statute make nonsense or force us to ignore the statutory scheme as a whole. In other words, just because it's omitted from one doesn't require us to read it more broadly. In fact, we read it as referring to the statute in which it's nested and only settlements of those circle claims, not more broadly settlements of other kinds of claims. That's correct, Your Honor. Can I ask one question on 1292B? The—this statute under 10 says taken within 30 days. I don't think there's a time limitation embedded in 1292B itself, and I don't know if you've looked at this or thought about this, but if the appellants filed a motion for 1292B certification now, what would your position be? I think we would oppose it on the merits. We would not oppose it as timely, and I consider there have been some sort of tolling. Of course, you know, if it extends jurisdictional, our position wouldn't necessarily matter in the Third Circuit, but we would not oppose it as untimely. Okay. And briefly, Your Honor, just on the merits, my last four seconds, we believe that there is no catch-22 here that alleging that the deliberate indifference over the three-month period at the beginning of the pandemic that led to 97 of 600 residents dying is sufficient to state a Monell claim and that it has nothing to do with the affirmative administration to or use by an individual of a covered countermeasure, but rather woefully inadequate infection control policies. And while this item says there are no factual allegations in the complaint, that's just not true. For example, just take one very quickly, is that a specific allegation that Fair Acres consistently allowed COVID-19-positive sick individuals to work at the facility, that's not some broad boilerplate is the term used in the briefing. And that's insulting almost to say that that's not a specific allegation. So unless the court has any further questions, we ask you to dismiss the appeal. Thank you, Mr. Pulver. Ms. Eisenstein, we'll give you the three minutes that you asked for for rebuttal. Thank you, Your Honor. I think that the conversation that we had with respect to the various ways in which the policy issues cut both ways in this case highlight a couple of things. First of all, this was a statute for an extraordinary measure passed for extraordinary time. And it was a statute that was designed to be highly protective of covered persons who were in the process of administering covered countermeasures and all of that in a declared emergency. And so I think all of that points to the fact that looking at other examples for non-extraordinary times, routine type cases, is not the appropriate way to evaluate the statute, rather looking at the plain terms and the plain text and following it is. In terms of Mr. Pulver's new argument that it creates jurisdiction rather than a right to appeal, I turn the court's attention to the language of 1292 itself, which itself says the courts of appeal shall have jurisdiction from appeal term. It doesn't grant a right to take appeal. So that's 1292A and also that type of language is more or less repeated in 1292B. So the fact that this mirrors the language of 1292A in terms of providing this court jurisdiction only highlights the fact that it is one that gives a right to appeal, not just one that opens a jurisdictional opportunity for appeal without additional appeal creating language. I want to just say a few additional words about the merits in my remaining time, which is that we're this court to reach the merits and I hope that it does follow the plain language of the statute. And I also don't think that 1292B, which provides discretion to the district court itself, which denied the motion, and as well as requires another barrier to certification of a 1292B in the third circuit is the appropriate, or I mean, we would seek it, but I don't think it's a viable alternative to E10, which is a direct right of appeal from a denial of immunity. But at this court, and I hope it does reach the merits, the district court did incorrectly deny the motion to dismiss on three errors. It incorrectly read the Prep Act as too narrowly limited to those allegations that have a direct causal relationship to the affirmative use of countermeasures, but the Prep Act is far broader than that in terms of applying to claims for loss that relate to the use or administration of covered countermeasures. It failed to look at the claim for loss as a whole. So the plaintiffs are masters of the complaint, but now want this court to ignore whole swaths of their own allegations that directly implicate the Prep Act. And it's their obligation to plead non-barred claims, not this court's obligation to sift through their allegations to pick out any that might fall outside the Prep Act immunity. And it properly applied the pleading standard for Monell. Mr. Pulver just said that there was an allegation of failure to have a policy of isolation and other factors to protect from COVID positive individuals, but the facts of this particular case that are alleged, the actual factual allegations don't establish a policy or cause a violation of federal rights, and particularly one that's an actionable violation of federal rights. Thank you very much, Your Honor. We ask this court reverse. Can I just ask you one question, Ms. Eisenstein, just as you're closing? So I just want to make sure I didn't mishear you. Under the 1292B alternative, I take the point that there's a layer of discretion at both levels, of course, that kick in. It hasn't been sought yet in this case, right? I just want to make sure I didn't mishear you. That's correct, Your Honor. We have not sought 1292B certification, and certainly we would believe that it meets all of the criteria for 1292B as well, in addition to meeting the criteria for an appeal directly to this court under subsection E10. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Pillard